**No. 25-40307**

---

**IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT**

---

Alfy Mayes,
                    Plaintiff - Appellant,


v.


Galveston County,
                    Defendant - Appellee.

---

On Appeal from the United States District Court
for the Southern District of Texas
3:24-CV-15

---

BRIEF OF APPELLANT, ALFY MAYES

---

SUBMITTED BY:
Ellyn J. Clevenger
1115 Moody Avenue
Galveston, Texas 77550
225.400.5428
ellynclevenger@gmail.com

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of 5th CIR Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

| Appellees: | Counsel for Appellees: |
|---|---|
| Galveston County | Robert Booth of Mills Shirley, L.L.P. Galveston, TX |

| Appellants: | Counsel for Appellants: |
|---|---|
| Alfy Mayes | Ellyn Clevenger Galveston, TX |

/s/ *Ellyn J. Clevenger*
Attorney of Record for Plaintiffs – Appellants

ii

## STATEMENT REGARDING ORAL ARGUMENT

Counsel for Plaintiff – Appellant requests oral argument. This case presents some nuanced factual issues, and the Court's disposition of the case may be assisted by oral presentation before the Court.

**TABLE OF CONTENTS**

**PAGE**

CERTIFICATE OF INTERESTED PARTIES ii

STATEMENT REGARDING ORAL ARGUMENT iii

TABLE OF CONTENTS iv

TABLE OF AUTHORITIES v

JURISDICTIONAL STATEMENT 1

STATEMENT OF THE ISSUE 1

STATEMENT OF THE CASE 1

SUMMARY OF THE ARGUMENT 9

STANDARD OF REVIEW 10

ARGUMENT 10

CONCLUSION 19

SIGNATURE OF COUNSEL 20

CERTIFICATE OF SERVICE 21

CERTIFICATE OF COMPLIANCE 22

CERTIFICATE OF ELECTRONIC COMPLIANCE 22

# TABLE OF AUTHORITIES

**CASES** **PAGE**

*Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006) 11

*Byers v. Dallas Morning News, Inc.*, 209 F.3d 419 (5th Cir. 2000) 11

*Garcia v. Prof'l Cont. Servs., Inc.*, 938 F.3d 236, 242 (5th Cir. 2019) 11

*Haire v. Bd. of Supervisors of La. State Univ. Agric. & Mech. Coll.*,
    719 F.3d 356 (5th Cir. 2013) 12

*Laxton v. Gap Inc.*, 333 F.3d 572 (5th Cir. 2003) 13, 14, 16

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) 11

*Patrick v. Ridge*, 394 F.3d 311 (5th Cir. 2004) 12

*Laxton v. Gap Inc.*, 333 F.3d 572 (5th Cir. 2003) 14

*Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338 (2013) 11

*Zamora v. City of Houston*, 798 F.3d 326 (5th Cir. 2015) 13

**OTHER AUTHORITIES**

28 U.S.C. § 1291 1

Title VII *passim*

FED. R. APP. P. 32 20

5th CIR. R. 32 20

5th CIR. R. 25 20

## JURISDICTIONAL STATEMENT

This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUE RAISED
## BY PLAINTIFF-APPELLANT, ALFY MAYES

Whether the evidence shows that Appellee's proffered reason for its adverse employment action (discipline) of Appellant, for incidents occurring on December 19, 2021 and January 11, 2021, is unworthy of credence, and therefore pretextual.

## STATEMENT OF THE CASE

### A.    Summary of Proceedings in the District Court

Appellant Alfy Mayes, Plaintiff in the district court below, filed suit against Appellee on or about January 10, 2024, claiming unlawful discrimination and retaliation by his employer, the Galveston County Sheriff's Office, in violation of Title VII of the Civil Rights Act of 1964 (ROA.1.). Appellant amended his complaint on February 12, 2024 (ROA.41.). Appellee filed an answer to Appellant's amended complaint on April 15, 2024 (ROA.66.).

Appellee Galveston County, Defendant in the district court, filed its motion for summary judgment on January 31, 2025. Appellee argued that it had legitimate, non-discriminatory reasons for adverse employment action taken against Appellant Mayes, for incidents occurring on December 19, 2021 (ROA.120-122.) and January 11, 2021 (ROA.122-124.).

1

In Appellant's response to summary judgment, Appellant indicated that Appellant was opting to proceed only on his claim of retaliation (ROA.353.). The district court granted Appellee's motion for summary judgment, stating *inter alia* that the Appellee "has conclusively proved" that disciplinary actions against the Appellant "were made for 'legitimate, nondiscriminatory or nonretaliatory reason[s].'" (ROA.486-487.).

## B.   Facts

Appellant Alfy Mayes hired on with the Galveston County Sheriff's Office on July 23, 2009 (ROA.378.). In March 2021, Appellant submitted a formal charge to the Equal Employment Opportunity Commission ("EEOC"), complaining of discrimination and retaliation (ROA.411-412.). At the time of submission of that charge, Appellant was working at the Galveston County Jail (ROA.411-412.). After the charge had been processed by the EEOC, Appellant filed suit; Appellee received notice of Appellant's lawsuit when it was served on November 18, 2021 (ROA.383., ROA.417.).

## C.   Retaliation

### i. December 19, 2021

On December 19, 2021, Appellant Alfy Mayes was assigned to work in the "Male Full Suicide Prevention" unit at the Galveston County Jail (*see* ROA.159.).

At around 11:15 a.m., while passing out lunch trays to inmates, Appellant Mayes noticed that an inmate had some cloth draped around his neck (*see* ROA.423.).

Appellant Mayes explained that the cloth was wrapped loosely, "like a scarf[]", and was not impairing the inmates ability to move, breathe, or retrieve his lunch tray (ROA.419.). Appellant Mayes observed that the inmate's actions posed no immediate danger to himself or anyone else (ROA.201.); the material around the inmate's neck was loosely draped, not tied or knotted in any way that would indicate the inmate was attempting to harm himself (ROA.419-420.).

Appellant Mayes, who was in the process of passing out lunch trays, continued to do so, checking on the inmate's status again after a few minutes (*see* ROA.202.), and returning to check on him at about 11:30, after completing delivery of meals to other inmates (ROA.202., ROA.419., ROA.423.). At 11:30, Appellant Mayes noticed that the inmate also had cloth around his waist and appeared to be ripping up a blanket (ROA.419., ROA.423.). Appellant Mayes called for assistance, providing that it was a "'nonemergency' situation" (ROA.419.). Sergeant Jarma and Deputy Prevost responded and removed the cloth from the individual (ROA.419., ROA.423.).

When Sergeant Jarma and Deputy Prevost arrived at the inmate's location, in response to Appellant Mayes' call, Jarma noted that the material (a torn smock) around the inmate's body was "lo[o]se as I could easily fit fingers behind it."

3

(ROA.425.). According to Sergeant Jarma, responding medical staff stated the inmate was "fine" (ROA.425.).

Jarma also stated "[t]here was no knot" in the material around the inmate's neck (ROA.422.). Jarma provided that ID Investigator Powell had been contacted, and that Powell informed "the [d]estroyed smock could be thrown away seeing as there is no [k]not, no crime, and nothing to preserve." (ROA.422., ROA.425.).

That same day (December 19, 2021), Sergeant Aaron Jarma sent an email and memorandum to jail administration, requesting that an Administrative Action Report ("AAR" (*see* ROA.383.)) be instituted against Appellant Alfy Mayes (ROA.423-424.). Jarma cited Mayes' "lack of performance today when it came to p[er]forming his most basic job functions" (ROA.423.), informing administration that Deputy Mayes had "prioritized feeding a pod rather than responding to a suicide attempt that was ongoing and that he had knowledge of." (ROA.423.).[1]

On December 22, 2021, Mayes was again assigned to work in the same unit, supervising the same inmate (ROA.89., ROA.192., ROA.159.). Mayes' December 22 shift was uneventful, and Mayes was not informed at the time of any complaints or issues with his actions during the previous shift (ROA.89., ROA.192., ROA.159.).

---

[1] Sergeant Jarma had a history of making racist/derogatory remarks to Appellant Mayes (ROA.358., ROA.383.).

Appellant Mayes received notice of a disciplinary investigation some weeks later, on January 11, 2022, by letter from Captain Cody Schlageter (ROA.429-430.). The letter stated that Mayes was being investigated for Neglect of Duty, and that the allegation was based on Sergeant Jarma's statements (ROA.429.). Specifically, Appellant Mayes was investigated for Neglect of Duty based on the ten-minute delay between Mayes' initial observation and phone call for assistance (ROA.429.).

On January 28, 2022, the Corrections Division issued an Administrative Action Report, which recited the allegations made by Sergeant Jarma, finding that Appellant Mayes had violated department policy regarding neglect of duty (ROA.197.). The Corrections Division recommended that Appellant Mayes receive a three-day suspension without pay (ROA.197-198.).

On March 8, 2022, the Administrative Action Committee found the recommendation of a three-day suspension was "not consistent with the fact situation in this matter" (ROA.196.). The Committee instead recommended a sanction of one day's suspension without pay (ROA.196.). On April 25, 2022, the Sheriff informed Appellant Mayes by letter that the Committee's recommendation would be upheld (ROA.210.).

### ii.    January 11, 2022

On January 11, 2022, Appellant Mayes was assigned to work in an area of the jail ("H-100") with a Deputy Dunn. According to Deputy Dunn, at about 9:55 a.m.,

he and Deputy Mayes began to instruct inmates to return to their cells "from their recreational hour." (ROA.433.). One of the inmates stated that he was not going to return to his cell, and ran up the stairs (ROA.433.). Dunn's report provided "I made my way up the stairs in an attempt to reason with inmate [] while Deputy Mayes called for additional deputies to step over to H-100. At this time I began to close in on [the inmate] while Deputies Mayes and Hines came up from behind." (ROA.433.).

Dunn further provided that Deputies Mayes and Hines assisted him in subduing and placing the inmate in restraints (ROA.433.). Deputy Mayes and Sergeant Jarma then escorted the inmate downstairs and placed him in his cell (ROA.433.). Dunn's report concluded "[a]ll assisting deputies exited with no injuries to report." (ROA.433.).

Deputy Hines reported that he responded to a call for additional deputies to H-100 at approximately 9:55 a.m. Deputy Hines met Deputy Mayes at the base of the stairs, from where he reported he could see Deputy Dunn on the second floor, ordering the inmate to return to the first floor (ROA.434.). Hines heard the inmate respond to Dunn's order with "I'll think about it." (ROA.434.).

Hines then made his way to the second floor with Deputy Mayes. Hines reported "[u]pon arriving in front of inmate [], Deputy Dunn went hands on with the inmate to gain compliance." (ROA.434.). Hines then assisted Dunn in placing the

inmate in restraints (ROA.434.). Hines stated that Sergeants Warfield, Jarma, and Moran then arrived, along with Corporal Mandela, and took over assisting with the inmate (ROA.434.). Appellant Mayes explained that he told the inmate not to go upstairs, and called for additional deputies to come to H-100 before the inmate ran up the stairs  (ROA.439.). Appellant Mayes also explained that policy and procedure requires officers to call for backup, and to wait on additional officers to arrive, if the situation allows (ROA.439.). Appellant Mayes opined that immediately running up the stairs after Deputy Dunn could have escalated the situation, but because he waited for Deputy Hines, and "[b]ecause we had enough personnel to properly handle this situation, no one got hurt to include the inmate himself." (ROA.439-440.).

On the day of this incident (December 19, 2021), Sergeant Jarma sent a memorandum to Jail Administration, stating that he had responded to a call to go to H-100 at approximately 9:58 a.m., regarding the inmate that refused to go back to his cell after recreational hour. Jarma stated that he subsequently reviewed video footage of the incident, and stated Deputy Mayes was at fault for not immediately following Deputy Dunn up the stairs, leaving Deputy Dunn alone with the inmate for "one minute and eighteen seconds." (ROA.435.). Jarma stated that, during this one minute and eighteen seconds, Dunn and the inmate "wrestle[d]" for "approximately thirty seconds", briefly "disingag[ing]", and then "re-engag[ing]" at the moment Deputy Hines arrived in the area (ROA.435.).

On January 13, 2022, Appellant Mayes received notice of the institution of a disciplinary investigation, by letter from Captain Schlageter (ROA.437.). The letter provided that Appellant Mayes was being investigated for "Cowardice or failure to perform a duty" (ROA.437.). The Corrections Division found that Appellant Mayes had violated department policy as alleged, based on Sergeant Jarma's statements, and recommended that Appellant Mayes' employment be terminated (ROA.224, 225.).

On March 8, 2022, the Administrative Action Committee found that Corrections' recommendation of termination of employment was "not consistent with the fact situation in this matter" (ROA.221.). The Committee recommended five days' suspension without pay, successful completion of the Field Training program, and subsequent 90-day probation (ROA.221.). On April 25, 2022, the Sheriff informed Appellant Mayes by letter that the Committee's recommendation would be upheld (ROA.210.).

### iii.    Summary Judgment

Defendant-Appellee's Motion for Summary Judgment stated that the Galveston County Sheriff's Office's (GCSO's) decision to discipline Plaintiff-Appellant for the incident occurring on December 19, 2021 "was justified by his failure to adhere to established protocols in responding to a suicide risk"

(ROA.120.). In support of this statement, Appellee cited to a case report (ROA.190-194.).

Neither the referenced report nor any of the documents attached to Appellee's Motion for Summary Judgment define "suicide attempt." (*See* ROA.104-336.). With respect to established protocols, the referenced report is silent, with the exception of the following statement: "Jarma ends his Memorandum with, "We talk about suicide attempts often in shift-briefing especially with it being the holiday season. In the last month, it has been brought up at least six times for A-shift supervisors." (ROA.193.).

With respect to the incident occurring on January 11, 2022, Appellee's Motion for Summary Judgment states "[t]he Sheriff's Office conducted a thorough investigation [….] The investigation revealed critical lapses in Mayes' actions during an altercation between an inmate and another deputy. Based on these findings, disciplinary action was taken in accordance with the Sheriff's Office's policies and procedures" (ROA.122-123.). Defendant-Appellee cited to a case report (ROA.211-220.) and a copy of Committee findings (ROA.221.) in support of these conclusions. The cited case report and findings do not cite any departmental rules prescribing officer conduct in situations requiring assistance of other officers.

## SUMMARY OF THE ARGUMENT

In 2021, Appellant, at that time a 12-year employee of the Galveston County Sheriff's Office (ROA.378-387.), filed suit against his employer under Title VII.

9

During Appellant's employment, he had never been subject to the serious disciplinary proceeding that is instituted by an Administrative Action Report (AAR) (*See* ROA.383.).

Shortly after Appellant's employer received notice of the lawsuit, two AAR actions were initiated against Appellant by Sergeant Aaron Jarma. The initial reports written by Jarma in both cases were adopted, almost verbatim, by Appellee, and serious disciplinary penalties were ultimately imposed against the Appellant as a result.

However, Sergeant Jarma's first written complaint to jail administration, on December 19, 2021, is incongruent with his own written reports regarding the incident in question. Sergeant Jarma's second written complaint, on January 11, 2022, contains an account of the second incident that is inconsistent with the accounts of three other officers present at the time. Both of Sergeant Jarma's reports contain conclusions of wrongdoing which are not supported by the evidence.

These inconsistencies are not minor. Taken together with Appellee's actions after the December 19, 2021 incident, and Appellant's accounts, a reasonable factfinder could conclude that Appellee's proffered reason for its adverse employment action is pretextual, and is more likely retaliatory.

## STANDARD OF REVIEW

This Court reviews the grant of a motion for summary judgment de novo, applying the same standard of review as the district court.

## ARGUMENT

Appellant, Alfy Mayes, appeals the district court's denial of summary judgment as to his claim of retaliation.

The antiretaliation provision of Title VII "prohibits an employer from 'discriminat[ing] against' an employee or job applicant because that individual 'opposed any practice' made unlawful by Title VII or 'made a charge, testified, assisted, or participated in' a Title VII proceeding or investigation." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 56 (2006) (alteration in original) (quoting 42 U.S.C. § 2000e-3(a)). When a retaliation case is based on circumstantial evidence, this Court applies the *McDonnell Douglas* framework. *See Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 425, 427 (5th Cir. 2000); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

Under this framework, the plaintiff has the burden to prove a prima facie case of retaliation by showing (1) he engaged in a protected activity; (2) he "suffered an adverse employment action"; and (3) "a causal connection exists between the protected activity and the adverse employment action." *Byers*, 209 F.3d at 427.

"Title VII retaliation claims must be proved according to traditional principles of but-for causation." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013). However, the but-for standard does not apply at the prima facie case stage. *Garcia v. Prof'l Cont. Servs., Inc.*, 938 F.3d 236, 242 (5th Cir. 2019). Instead, "[a]t the prima facie case [stage], a plaintiff can meet his burden of causation simply by showing close enough timing between his protected activity and his adverse employment action." *Id.* at 243.

In this case, the first prong of the Appellant's prima facie case is satisfied. When Appellant filed a lawsuit under Title VII, even though the suit was unsuccessful, he engaged in protected activity. *See Hamilton v. Tex. DOT*, 85 Fed. Appx. 8, 11 (5th Cir. 2004).

Prior to December 19, 2021, Appellant had been employed with the Galveston County Sheriff's Department for twelve (12) years (ROA.159.) and had never received any reprimands which involved an Administrative Action Report (ROA. 383-385.). He then suddenly received two, in rapid succession, and was disciplined harshly (ROA.383-386.).

With respect to causation, Appellant filed suit against his employer, and his employer was placed on notice of that suit when it was served on November 18, 2021 (ROA.383.; ROA.417.). About a month later, on December 19, 2021, Sergeant Jarma

requested institution of an AAR against Appellant (ROA.423-424.). Sergeant Jarma initiated a second AAR against Appellant on January 11, 2022 (ROA.423.).

If the plaintiff establishes a prima facie case, then the employer has the burden of production to provide "a legitimate, non-discriminatory reason" for the adverse employment action. *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004). If the employer meets this burden, then the plaintiff has the burden to prove that the proffered reason is pretextual. *Id*. "A plaintiff may establish pretext by showing that a discriminatory motive more likely motivated h[is] employer's decision, such as through evidence of disparate treatment, or that h[is] employer's explanation is unworthy of credence." *Haire v. Bd. of Supervisors of La. State Univ. Agric. & Mech. Coll*., 719 F.3d 356, 363 (5th Cir. 2013).

Under the cat's paw theory of liability, a plaintiff can establish but-for causation even if the decisionmaker directly responsible for the adverse employment action did not act out of retaliatory animus. *See Zamora v. City of Houston*, 798 F.3d 326, 335 (5th Cir. 2015). A plaintiff proceeding under this theory must prove that (1) his supervisor, motivated by retaliatory animus, took action intended to cause an adverse employment action; and (2) that action was the but-for cause of his adverse employment action. *Id.* at 333.

In *Laxton v. Gap Inc*., 333 F.3d 572 (5th Cir. 2003), this Court conducted a *de novo* examination of a district court's ruling on a motion for judgment as a matter of

law. The Court explained that, in examining sufficiency of the plaintiff's showing of pretext, its inquiry is *not* whether the stated reason for the adverse employment action is correct. *Id.* at 579. This Court asks instead whether the employer's perception of the employee's performance is the real reason for the adverse employment action. *Id.*

In order for the plaintiff to survive the employer's motion for judgment as a matter of law, the employee must provide evidence permitting the factfinder to disbelieve the employer's proffered reason. "'The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination.'" *Id.*, *quoting Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 147 (2000).

In *Laxton*, the defendant employer provided evidence that plaintiff had committed several violations of company policy over a six-week period, and that plaintiff had alienated those who worked under her, resulting in an adverse employment action (termination of employment). *Laxton v. Gap Inc.*, 333 F.3d at 579. This Court treated the *Laxton* plaintiff's testimony rebutting the substance of policy violations as evidence of the falsity or lack of credence of the defendant's proffered justification for plaintiff's discharge. *Id.* at 580. The *Laxton* plaintiff conceded that some violations of store policy took place, but explained in testimony

14

that other asserted violations had not occurred, or had not been egregious. *Id.* at 580582.

In addition to attacking the substance of the alleged violations, this Court noted that the plaintiff's testimony provided undermined the credibility of the employer's proffered justification for the adverse employment action. *Id.* at 581-582. For example, plaintiff testified "to the common sense notion" that if the employer had been genuinely concerned about her performance, it would first have attempted corrective action before terminating her. *Id.* Instead, the employer terminated her with very little warning. *Id.*

This Court also found that the factfinder may have found the defendant's witnesses not credible, based on inconsistent and conflicting testimony. *Id.* at 582. Taken together with the plaintiff's prima facie case (showing qualification for the job), this Court found that a reasonable factfinder could have found the defendant's proffered reason for the adverse employment action was not the real reason. Therefore, this Court concluded the plaintiff had produced evidence of pretext sufficient to survive the defendant's motion for judgment. *Id.* at 583.

In this case, with respect to the incident occurring on December 19, 2021, Sergeant Jarma's email to jail administration reported that Mayes "prioritized feeding [inmates] rather than responding to a suicide attempt that was ongoing and that he had knowledge of." (ROA.423.). Later, Jarma's statements conflict with this

15

characterization; Jarma stated that Appellant Mayes had checked on the inmate at "10:58, 11:08, and 11:10" and then again at 11:20, at which time Mayes "talked to [the inmate] for some[] time at the cell door." (ROA.424.).

Jarma also reported that the material draped around the inmate's neck was not tied or knotted (ROA.422.), and that it was loose, allowing Jarma to easily put his fingers behind it (ROA.425.). Jarma provided that medical staff assessed the inmate as fine, and that an investigator had stated that the torn material could be disposed of because there was no knot, no crime, and nothing to preserve (ROA.422, ROA.425.). This is consistent with Appellant Mayes' assessment of the situation – that it was not a suicide attempt; the inmate was not an immediate danger to himself or others; and that Mayes required assistance to remove the material, but it was not an emergency (ROA.201., ROA.419., ROA.423.). Additionally, on December 22, Mayes worked in the same area, supervising the same inmate, without having been given any instruction or information as to any supposed deficiencies in behavior (ROA.89., ROA.192., ROA.159.).

The conclusions set out in Sergeant Jarma's December 19, 2021 memorandum (ROA.423.) were ultimately wholly adopted and restated in the Administrative Action Report (ROA.197-198.). They are not, however, consistent with the evidence in Jarma's own reports. On the other hand, Jarma's reports are consistent with

16

Appellant Mayes' accounts of his observations and assessments, and seem to support the reasonableness of Appellant Mayes' actions.

Additionally, as in *Laxton*, if it had been true that Sergeant Jarma perceived Deputy Mayes' actions to have been so egregious, Appellant would not have been assigned to supervise the same inmate three days later, without so much as a[n] corrective instruction. Had Sergeant Jarma truly believed Deputy Mayes had placed an inmate's life in jeopardy by neglecting to call for assistance at 11:20 (rather than at 11:30), there would not have been a delay of several weeks before Deputy Mayes was notified of the problem.

In this case, as in *Laxton*, a reasonable finder of fact could find that the Appellee's proffered reason for the adverse employment action was not the real reason.

The same is true of the incident occurring on January 11, 2022. Sergeant Jarma's account (ROA.435.) was wholly adopted into the Administrative Action Report (ROA.224-225.). But Jarma's account is inconsistent with that of Deputy Dunn, who reported that he chose to run up the stairs after the inmate while Deputy Mayes called for backup; Deputies Hines and Mayes had assisted him in restraining the inmate; the inmate was ultimately returned to his cell; and no one was injured (ROA.433.). Deputy Dunn did not report that he had fought with the inmate or that he had been in any danger (ROA.433.).

17

Sergeant Jarma's report also conflicts with Deputy Hines' statements. Jarma reported that Deputy Dunn and the inmate were engaged in a physical altercation when Deputy Hines arrived (ROA.435.). However, Deputy Hines reported that, upon arrival, he could see Deputy Dunn on the second floor, ordering the inmate to return to the first floor (ROA.434.). Hines also reported that he could hear the inmate respond "I'll think about it" (ROA.434.). Hines did not report that Deputy Dunn and the inmate were engaged in any type of physical altercation.

Appellant Mayes explained that his training, experience, and understanding of policies and procedures dictated that immediately chasing the inmate up the stairs, along with Deputy Dunn, would only have escalated the situation (ROA.439-440.). Mayes' account of the incident was consistent with the accounts of both Hines and Dunn.

Appellee produced no evidence of a policy which requires its officers to immediately follow their fellow officers in pursuit of an unruly inmate, rather than waiting between one and two minutes for backup. Here, as in the incident of December 19, Deputy Mayes' actions resulted in a resolution of the situation without injury to any officer or inmate.

Deputy Dunn, on the other hand, chose to run up the stairs after the inmate – again, rather than waiting for backup officers, who arrived about five minutes later. Deputy Dunn was not subject to discipline for this rash action; instead, Jarma chose

18

to characterize Dunn's action as "an attempt to enforce the rules of the Galveston County Jail" (ROA.435.). Notably, again, Jarma did not cite to any rule which requires an officer to immediately pursue an inmate, without waiting for backup, nor did any of the officers involved state any emergent circumstances which would seem to require such pursuit.

Based on these facts, and the extreme disparity between the accounts given by Sergeant Jarma and those given by Appellant Mayes, Deputy Hines, and Deputy Dunn, as well as the internal inconsistencies in Sergeant Jarma's own statements regarding the incidents, a reasonable finder of fact could conclude that the Appellee's proffered reason for imposition of discipline was not the real reason. Therefore, the district court erred in concluding the Plaintiff-Appellant had not produced evidence of pretext sufficient to survive the Defendant-Appellee's motion for summary judgment.

## CONCLUSION

In conclusion, Appellant, Alfy Mayes, requests this Court vacate the district court's order granting summary judgment, and remand the case for further proceedings.

DATE:  February 9, 2026.

Respectfully submitted,

*/s/ Ellyn Julia Clevenger*
Ellyn Julia Clevenger
State Bar Roll Number 24058662
1115 Moody Avenue
Galveston, Texas 77550
ellynclevenger@gmail.com

## CERTIFICATE OF SERVICE

This is to certify that on this the 9th Day of February, 2026, a true and correct copy of the foregoing Brief of Appellees was transmitted to counsel for Defendant, in accordance with 5th Cir. R. 25.2.5.

*/s/ Ellyn Julia Clevenger*

21

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limit of FED. R. APP. P. 32(a)(7)(B) because, excluding the parts of the document exempted by FED. R. APP. P. 32(f) and 5th CIR. R. 32.1, this document contains 4,147 words.

This document complies with the typeface requirements of FED. R. APP. P. 32(a)(5), and 5th CIR. R. 32.1 and the type-style requirements of FED. R. APP. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 365 in Times New Roman, 14 point.

*/s/ Ellyn Julia Clevenger*

## CERTIFICATE OF ELECTRONIC COMPLIANCE

Counsel also certifies that on February 9, 2026, this brief was transmitted to Mr. Lyle W. Cayce, Clerk of the United States Court of Appeals for the Fifth Circuit, through the court's CM/ECF document filing system, https://ecf.ca5.uscourts.gov/. Counsel further certifies that: (1) required privacy redactions have been made, 5th Cir. R. 25.2.13; (2) the electronic submission is an exact copy of the paper document, 5th Cir. R. 25.2.1; and (3) the document has been scanned with the most recent version of Norton 360 and is free of viruses.

*/s/ Ellyn Julia Clevenger*